TERRY REGAN *et al.*, Plaintiffs-Appellants, v. CARL IVANELLI, SR., *et al.*, Defendants-Appellees.

Second District   No. 2—92—1096

Opinion filed July 1, 1993.

Donald E. Schlyer, of Schlyer & Associates, P.C., of Lemont (William P. Ryan, of counsel), for appellants.

Anthony F. Mannina, of Wheaton, for appellees.

JUSTICE COLWELL delivered the opinion of the court:

Plaintiffs, Terry Regan and Dennis Egan, appeal from the circuit court of Du Page County's orders dismissing their action for fraudulent conveyance and entering judgment against plaintiffs and their counsel for a total of $3,909.75 in fees and costs pursuant to Illinois Supreme Court Rule 137 (134 Ill. 2d R. 137). Plaintiffs contend that: (1) the trial court improperly dismissed plaintiffs' complaint under section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—619)); (2) plaintiffs' complaint set forth a cause of action for fraudulent conveyance under both fraud in fact and fraud in law principles; and (3) the trial court's award of attorney fees to defendants was an abuse of discretion. We reverse.

Plaintiffs filed the present complaint to avoid a fraudulent transfer of beneficial interest in a land trust and for other relief on January 6, 1992. The following facts, which plaintiffs contend give rise to this claim, all took place prior to the original adjudication between these parties which was affirmed by this court in *Regan v. Garfield Ridge Trust & Savings* (1991), 220 Ill. App. 3d 1078.

Plaintiffs executed a contract with a land trust on March 6, 1986, for the purchase of a 34-acre parcel of land in Lemont, Illinois. The land trust beneficiaries, all defendants in this action, included Carl Ivanelli, Jr., James Ivanelli, Gerald Ivanelli, Jeanine Ivanelli, and Janice Ivanelli-Altice. The beneficiaries entered into the contract with plaintiffs for a purchase price of $400,000. Pursuant to this contract, the plaintiffs were to make a partial payment of $100,000 on or before September 6, 1986, and the beneficiaries were to transfer to the plaintiffs four one-acre lots. Due to an existing lien encumbering the subject property, the beneficiaries were unable to transfer the title free and clear of all encumbrances, and the parties entered into an extension for the performance of the contract. Plaintiffs deposited $25,000 with beneficiaries on September 8, 1986, and the parties later entered into an escrow agreement. The lien was released on October 21, 1986, after which plaintiffs tendered $100,000 to defendants.

Plaintiffs did not make the $150,000 payment due on or before March 6, 1987, and beneficiaries did not send plaintiffs a title commitment for the lots to be conveyed at that time. There was conflicting testimony over whether the beneficiaries even demanded payment since the plaintiffs were plagued with structural problems on the property. Starting in July 1987, the beneficiaries' father, Carl Ivanelli, Sr. (Carl, Sr.), began negotiating with plaintiffs in order to facilitate progression of the sale so that the parties could close in September. In September 1987, Carl, Sr., proposed a plan in which he and a friend would receive 30% of Bluff Point Development, plaintiffs' development company, in return for providing financing. Plaintiffs rejected this proposal.

The September 6, 1987, closing date was set and continued twice. The beneficiaries then anticipatorily breached the contract on September 18, 1987, by attempting to terminate said contract. The beneficiaries assigned their beneficial interest in the trust on the same day to Carl, Sr. After September 1987, Carl, Sr., made further efforts to develop the subject property and held himself out as Bluff Point Development's owner. On May 23, 1988, Carl, Sr., assigned his interest in the land trust back to his children, who resumed as beneficiaries.

Plaintiffs filed a three-count complaint on March 10, 1988, against the beneficiaries, Carl, Sr., and Garfield Ridge Trust & Savings Bank as trustee. In count I, plaintiffs sought specific performance of a contract for the purchase of certain real estate from the land trust. In count II, they alleged that Carl, Sr., tortiously inter-

fered with the contract, and in count III, they alleged that the children who were land trust beneficiaries when the contract was executed conspired with Carl, Sr., to interfere tortiously with the contract. In an order dated June 19, 1990, the trial court granted plaintiffs specific performance as alleged in count I. A jury entered a verdict against Carl, Sr., on the other two counts, awarding plaintiffs $400,000 on count II and $200,000 on count III. The trial court entered judgment notwithstanding the verdict in favor of Carl, Sr., on count III. Plaintiffs appealed, contending the entry of judgment notwithstanding the verdict was error and that they are entitled to a new trial on count III because the jury's finding that only one defendant was involved in the alleged conspiracy was inconsistent. The remaining jury verdict on count II in favor of plaintiffs and the trial court's judgment for specific performance were affirmed by this court in *Regan v. Garfield Ridge Trust & Savings Bank* (1991), 220 Ill. App. 3d 1078. The plaintiffs, pursuant to the decree of specific performance, purchased the parcel of real estate for a sum in excess of $300,000.

Plaintiffs then filed the present complaint on January 6, 1992, to avoid a fraudulent transfer of beneficial interest. The complaint alleged that Carl, Sr., gratuitously transferred the beneficial interest in the land trust to his children on May 23, 1988, after the commencement of plaintiffs' action for tortious interference with contract was filed on March 10, 1988. Such transfer left Carl, Sr., without sufficient assets or income to satisfy the subsequent judgment entered against him. Defendants filed a motion to dismiss plaintiffs' complaint, pursuant to section 2—619 of the Code, which alleged (1) that plaintiffs' fraudulent conveyance action was barred by the judgment entered in the action for breach of contract and tortious interference with contract; (2) that the appellate court ruled that the transfer of the beneficial interest by the Ivanelli children to their father, Carl, Sr., was a "matter of convenience" for negotiation purposes; (3) that the transfer of the beneficial interest back to the children was a return of the property to its original rightful owners and was not a transfer to defraud creditors; and (4) that the appellate court affirmed the findings of fact that the debtor, Carl, Sr., was an agent of the children and that he never acquired ownership of the trust property.

The trial court determined that the children transferred the beneficial interest in the property to Carl, Sr., and for purposes of defendants' motion, it did not matter whether that transfer was for consideration. The trial court also determined there was a transfer

of the property back to the children from Carl, Sr., for no consideration. On the basis of the undisputed facts presented, the trial court concluded there could not be a fraudulent transfer as intended under the Uniform Fraudulent Transfer Act (Ill. Rev. Stat. 1991, ch. 59, par. 101 *et seq.*) and thus there was no genuine issue of material fact.

Defendants filed a motion for attorney fees and costs pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). Defendants argued that plaintiffs' complaint, which alleged that the assignment of beneficial interest was a transfer of property owned by Carl, Sr., contradicted the fact that plaintiffs knew that the children, and not Carl, Sr., were the original owners of the property before it was transferred to Carl, Sr. Defendants further alleged the plaintiffs knowingly misrepresented the true facts to the court. The trial court granted defendants' motion for fees and stated in its order that the plaintiffs' complaint was "wholly unfounded in fact and law and that said complaint was not brought in good faith." Plaintiffs filed a timely appeal.

■■ We first address defendants' oral motion presented at arguments before this court pertaining to their motion for fees and costs filed in the previous trial court action. Defendants attached to their motion and made a part thereof the statement of facts contained in plaintiffs' appellate brief from the tortious interference action. Defendants stated that this document did not become a part of the court file even though it was part of the common-law record. Defendants' motion requests that the portion of the brief referred to in their motion be made a part of the record in the instant case.

Defendants' request relates to their claim that the plaintiffs made an admission by including in the statement of facts of their appellate brief that the Ivanelli children were the owners of the beneficial interest in the land trust and that the beneficial interest was initially transferred by the children to Carl, Sr. Plaintiffs' complaint for fraudulent conveyance does not contain this fact. Defendants contend plaintiffs were trying to hide the fact that the children initially owned the beneficial interest so that the trial court in the instant action would not be fully informed.

A judicial admission is a clear, deliberate, unequivocal statement of a party regarding a concrete fact within that party's particular knowledge. (*Caponi v. Larry's 66* (1992), 236 Ill. App. 3d 660, 671.) Plaintiffs' previous appellate brief included the fact that the children initially owned the beneficial interest because it was relevant to the tortious interference claim. However, such fact need not have

been stated in the present complaint since its inclusion was not necessary in order to state a basic claim for fraudulent conveyance. We therefore deny defendants' motion since this statement is not necessary to plead a fraudulent conveyance claim and its inclusion in the record would not change our decision here.

█ Plaintiffs next contend that the trial court improperly dismissed plaintiffs' complaint pursuant to section 2—619 of the Code, which states in pertinent part as follows:

"(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds ***.

* * *

(4) That the cause of action is barred by a prior judgment." (Ill. Rev. Stat. 1991, ch. 110, par. 2—619.)

A motion to dismiss admits facts well-pleaded together with all reasonable inferences which can be gleaned from those facts, but does not admit conclusions of law or conclusions unsupported by allegations of specific facts on which such conclusions rest. (*Munizza v. City of Chicago* (1991), 222 Ill. App. 3d 50, 52.) A trial court should dismiss an action only if it is apparent that no set of facts can be proven that will allow plaintiff to recover. (*Munizza*, 222 Ill. App. 3d at 51.) A reviewing court must determine whether the allegations in the complaint, when read in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. *Munizza*, 222 Ill. App. 3d at 52.

██ █ Plaintiffs argue their complaint set forth a cause of action to set aside the fraudulent conveyance of the land trust under the Uniform Fraudulent Transfer Act (Act), which Illinois has adopted (see Ill. Rev. Stat. 1991, ch. 59, par. 101 *et seq.*). Plaintiffs allege that Carl, Sr., gratuitously assigned his beneficial interest in the trust to the children, that Carl, Sr., did not receive consideration for such conveyance, and that Carl, Sr., became insolvent as a result of this transfer, leaving him without sufficient property to discharge plaintiffs' claim for tortious interference. Under the Act, the transfer of an interest in property may be set aside as fraudulent if the transfer tends to hinder or defeat the rights of a grantor's creditor. Illinois recognizes two categories of fraudulent conveyance—those transfers which are "fraud in fact" and those which are "fraud in law." Section 5(a)(1) of the Act defines fraud in fact as follows:

"(a) A transfer made of obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose

before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor." (Ill. Rev. Stat. 1991, ch. 59, par 105(a)(1).)

Such "fraud in fact" conveyances require a specific intent to "disturb, delay, hinder or defraud" a creditor. *Gendron v. Chicago & North Western Transportation Co.* (1990), 139 Ill. 2d 422, 437.

A presumption of fraud occurs where there is a voluntary transfer for no consideration and there is an existing or contemplated debt for payment of which the transferor did not retain sufficient assets. Such a transaction is considered "fraud in law," as contained in section 6(a) of the Act:

> "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." (Ill. Rev. Stat. 1991, ch. 59, par. 106(a).)

Thus, "[i]n order to establish that a conveyance is fraudulent in law, three elements must be present: (1) there must be a transfer made for no or inadequate consideration; (2) there must be existing or contemplated indebtedness against the transferor; and (3) it must appear that the transferor did not retain sufficient property to pay his indebtedness." (*Gendron*, 139 Ill. 2d at 438.) Since fraud is presumed in these circumstances, the transferor's actual intent is irrelevant. (*Anderson v. Ferris* (1984), 128 Ill. App. 3d 149, 153.) Once the three elements showing fraud in law have been proved, the presumption of fraud becomes conclusive unless rebutted. *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 792.

Section 7(d) of the Act states that "a transfer is not made until the debtor has acquired rights in the asset transferred." (Ill. Rev. Stat. 1991, ch. 59, par. 107(d).) Section 2(b) defines an "[a]sset" as "property of a debtor." (Ill. Rev. Stat. 1991, ch. 59, par. 102(b).) Section 2(*l*) defines a "[t]ransfer" as "disposing of or parting with an asset." (Ill. Rev. Stat. 1991, ch. 59, par. 102(*l*).) Thus the only property which can be conveyed to defraud creditors is that in which the debtor has an interest.

The trial court found that the undisputed facts as presented could not sustain an action for fraudulent transfer under the Act. The facts as pleaded indicated that Carl, Sr., transferred the beneficial interest for no consideration, that Carl, Sr., contemplated an indebtedness to plaintiffs at the time of the transfer, and that Carl, Sr., did not retain sufficient funds to pay his indebtedness. Yet the trial court found in favor of defendants. Apparently, the trial court believed the undisputed facts here did not demonstrate an intent by the children irrevocably to relinquish control and dominion over the property when they transferred their interest to Carl, Sr. Since the children's transfer to Carl, Sr., was not intended to be a gift, the court found the reassignment by the father was not a transfer of ownership interest as contemplated by the Uniform Fraudulent Transfer Act and thus the Act did not apply.

Plaintiffs argue that, since Carl, Sr., transferred his interest to the beneficiaries without consideration, both fraud in fact and fraud in law can be proved here. Plaintiffs rely on several cases in which the conveyance was made by the debtor for a wife or other family member and was thus presumed by the court to be a voluntary gift. (See *Stoller v. Exchange National Bank* (1990), 199 Ill. App. 3d 674; *Bawoll*, 120 Ill. App. 3d at 791; *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87; *Anderson v. Ferris* (1984), 128 Ill. App. 3d 149.) In *Stoller*, the parents deeded property into a land trust with their son and daughter as beneficiaries and joint tenants in 1976. The debtor son lived on the property from 1975 until 1984. In 1979, the son borrowed $400,000 which was secured by a 100% assignment of the beneficial interest in the property. When the son later defaulted, the bank sued to recover on the notes. The son then conveyed his interest to a third party who then quitclaimed the son's interest to his sister without consideration. The court concluded the transfer of the son's interest in the property was a voluntary gift to the sister, that the son failed to retain assets to pay an existing debt, and thus the requirements for fraud in law were satisfied. *Stoller*, 199 Ill. App. 3d at 683.

Similarly, Carl, Sr., here conveyed property back to his children after the contemplated debt to plaintiffs became apparent. Carl, Sr.'s action in putting himself forward as the owner of the property before he transferred his interest exhibited an exercise of dominion and control. Carl, Sr., also instructed the trustee to terminate the contract with the plaintiffs. Since this case comes to us on a judgment granting a motion to dismiss, all well-pleaded facts must be taken as true. (*Rodgers v. St. Mary's Hospital* (1992), 149 Ill. 2d

302, 310.) These facts, standing alone, suggest that Carl, Sr., was acting as the beneficial owner who fraudulently conveyed his interest in order to avoid the contemplated debt to plaintiffs.

■ Plaintiffs have not cited any cases that found a fraudulent conveyance where the debtor received a beneficial interest from the beneficiaries and then transferred the interest back to the same beneficiaries after a debt was contemplated. However, the factual situation here would not preclude a properly filed complaint containing such facts from ever stating a viable cause of action under fraudulent conveyance principles. As this court previously stated, "there is substantial evidence that Carl, Sr., was acting in his own interest" and the evidence showed he repudiated the contract immediately after taking the assignments from the beneficiaries "with the intent of causing a breach." (*Regan*, 220 Ill. App. 3d at 1088.) Although Carl, Sr., only had the beneficial interest in the property for eight months, the evidence in the previous trial action indicated Carl, Sr., exercised "dominion and power" by attempting to develop the subject property and holding himself out as the development company's owner. Carl, Sr.'s actions indicate that when he transferred his beneficial interest in the property, he acted as a beneficial owner contemplating a debt. Carl, Sr., himself testified during the previous trial action that, when he transferred his interest back to the children, he did so knowing that "there was going to be trouble." We find the facts here, taken as true, have stated a cause of action for fraudulent conveyance.

Since we find plaintiffs have properly pleaded a claim for fraudulent conveyance, we must now determine whether, as defendants argue, plaintiffs' complaint is barred by the doctrine of *res judicata*. Under this doctrine, the final judgment of a court is conclusive of the rights of the parties and their privies and absolutely bars subsequent actions involving the same claims or demands by the same parties. (*Catlett v. Novak* (1987), 116 Ill. 2d 63, 67.) The bar extends not only to the issues that were actually decided in the former proceeding but also to any other matters made relevant by the subject matter which might have been raised or decided. (*Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 649-50.) Even though a single group of operative facts may give rise to the assertion of different types of relief, a single cause of action may still exist. (*Meyers v. Kissner* (1991), 217 Ill. App. 3d 136, 144.) Thus, an action in equity can bar a subsequent suit in law, or vice versa. *Meyers*, 217 Ill. App. 3d at 144.

Illinois courts have used either the "same evidence" test or the "transactional" approach to determine whether there is an identity of the causes of actions. (*Best Coin-Op*, 189 Ill. App. 3d at 652-54.) Under the same evidence test, *res judicata* will apply if the evidence needed to sustain the second cause of action would have sustained the first cause of action or the same facts were essential to maintain both actions. (*Rodgers*, 149 Ill. 2d at 311-12; *Best Coin-Op*, 189 Ill. App. 3d at 652.) The "transactional" approach considers whether both suits arose from the same transaction, incident, or factual situation. Under this test, the assertion of different kinds of theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief. *Rodgers*, 149 Ill. 2d at 312; *Best Coin-Op*, 189 Ill. App. 3d at 654.

Where the same factual allegations form the basis for two allegedly different causes of action, the fact that a party proceeds on different theories or seeks different relief does not prevent the operation of *res judicata*. (*Best Coin-Op*, 189 Ill. App. 3d at 52.) Therefore, in determining whether the prior judgment in the tortious interference case bars plaintiffs' action here, it is necessary to compare the nature, purpose, and allegations of the present cause of action with the earlier proceedings while considering that two causes of action are not necessarily the same merely because they arise out of the same set of facts. See *Best Coin-Op*, 189 Ill. App. 3d at 652.

In order to prevail on the tortious interference claim, plaintiffs had to prove the following elements: (1) the existence of a valid, enforceable contract between plaintiffs and the children; (2) Carl, Sr.'s awareness of this contractual relationship; (3) Carl, Sr.'s intentional and unjustified inducement of a contractual breach; (4) a subsequent breach by the other party as a result of Carl, Sr.'s wrongful acts, and (5) damages. (*Regan*, 220 Ill. App. 3d at 1088.) The law of tortious interference with contract is intended to protect the interests of the parties to a contract. To establish fraudulent conveyance in law, three elements must be present: (1) a transfer made for no or inadequate consideration; (2) existing or contemplated indebtedness against the transferor; and (3) the transferor did not retain sufficient property to pay his indebtedness. (*Gendron*, 139 Ill. 2d at 438.) This Act is intended to protect the interest of creditors. See generally Ill. Rev. Stat. 1991, ch. 59, par. 101 *et seq.*

We conclude that plaintiffs' claim is not barred by *res judicata*. Plaintiffs' complaint against defendants is based on different operative facts than their underlying prior claim against defendant for

tortious interference with contract. Although much of the same evidence would be required to support either plaintiffs' tortious interference claim or fraudulent conveyance claim, we cannot say that the evidence necessary to sustain the first complaint would sustain the second. Clearly, fraudulent conveyance by Carl, Sr., was not among the findings of fact in the trial court. Indeed, plaintiffs could not have filed a fraudulent conveyance claim until judgment was entered in the underlying prior claim since they would only then know that Carl, Sr., did not have adequate funds to pay the judgment against him.

Further, plaintiffs would have a claim of tortious interference of contract regardless of whether Carl, Sr., conveyed his beneficial interest in the land trust back to the children or not. In addition, plaintiffs brought their tortious interference claim against Carl, Sr., as a party to the contract at issue. However, plaintiffs proceeded on the cause of action here as judgment creditors of Carl, Sr. Therefore the nature, purpose and allegations of the present cause of action differ from those in the previous proceedings.

Where, as here, two suits are grounded upon different duties owed to plaintiffs, and the same evidence would not necessarily sustain both claims, despite the involvement of the same parties, we cannot say that all that has been substituted in the second suit is a different theory of recovery. We find the plaintiffs' claim, taking all well-pleaded facts to be true, sufficiently states a cause of action for fraudulent conveyance and is not barred by *res judicata*. Therefore, we reverse the trial court's dismissal of this action.

■ Plaintiffs also contend that the trial court's award of sanctions under Rule 137 was an abuse of discretion. Defendants here filed a petition for sanctions and fees which alleged that plaintiffs' complaint contained false statements and was not brought in good faith because the plaintiffs withheld material facts from the court. Defendants alleged plaintiffs were attempting to trick the court into believing the present action merely involved a transfer of property from Carl, Sr., to the children, since the complaint for fraudulent conveyance did not state the fact that the children initially owned the property when the contract with plaintiffs was executed.

The trial court granted defendants' petition and stated:

"Counsel, I think there is no law (precedential cases) because your assertions are so totally preposterous that no one would be, no one would have the gall to bring an action of this type.

* * *

This is in no way, shape, or form a conveyance in defraud of your clients' rights. What happened was they contracted to get a piece of property. The property was conveyed from the children to the father, ultimately back to the children, and your clients paid for that property after the decree of specific performance by Judge Henninger.

What your clients are trying to do is have the property and the money they paid for it, and that in no way, shape, or form comes within the meaning of the statute dealing with fraudulent conveyances."

Illinois Supreme Court Rule 137 provides in pertinent part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." (134 Ill. 2d R. 137.)

Thus, Rule 137 imposes upon both client and counsel the duty to make a reasonable inquiry into the facts to support a legal claim or defense before pleadings and other legal papers are filed with the court. (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 623.) The purpose of the rule is not to penalize the litigants simply because they were not successful in the litigation, but rather to prevent abuse of the judicial process by penalizing the litigant who brings vexatious or harassing actions that are based on false statements or are without legal foundation. (*Singer v. Brookman* (1991), 217 Ill. App. 3d 870, 879.) The rule requires an attorney objectively to review the information submitted by the client, to determine if it factually supports the client's claim. (*Chicago Title & Trust*, 177 Ill. App. 3d at 625.) If such review reveals important discrepancies, inconsistencies, or gaps in the information provided, the attorney must investigate further prior to filing the relevant legal paper with the court. *Chicago Title & Trust*, 177 Ill. App. 3d at 625.

Rule 137 may only be applied when the party seeking the sanctions has sustained his burden of proving that each of its requirements had been met. (*Hazel Crest Federation of Teachers, Local 2077 v. Board of Education of School District 152½* (1990), 206 Ill.

App. 3d 69, 80.) The allowance of fees and expenses under this provision is entrusted to the discretion of the trial court, and we will not disturb a trial court's imposition of sanctions absent an abuse of discretion. *Hazel Crest Federation of Teachers*, 206 Ill. App. 3d at 80.

Since we find plaintiffs have properly stated a cause of action for fraudulent conveyance and such claim was not barred by *res judicata*, there is no basis for sanctions against plaintiffs, and we reverse the trial court's decision on this issue.

For the foregoing reasons, we reverse the decision of the circuit court of Du Page County and remand the cause for further proceedings.

Reversed and remanded.

UNVERZAGT and WOODWARD, JJ., concur.