In re Larry MILLER, a/k/a Laurence
Miller, Debtor.

In re Barbara MILLER, Debtor.

David GROCHOCINSKI, Trustee of the
Bankruptcy Estates of Larry Miller
and Barbara Miller, Plaintiff,

v.

Barbara MILLER, as Trustee of the Miller Children Trust, Laurence Miller, as
Trustee of the Miller Children Trust,
Eric Miller, Julia Miller McDonnell, and
Andrew Miller, Defendants.

Bankruptcy Nos. 92 B 18943, 92 B 19473.
Adv. No. 92 A 1295.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 18, 1994.

Howard Adelamn and Brad A. Berish, Adelman, Gettleman & Merens, Chicago, IL, for trustee.

John Farrell, Freeborn & Peters, Chicago, IL, for FDIC.

Marvin Berz, Chicago, IL, for debtors.

## MEMORANDUM OPINION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II AND III OF THE COMPLAINT

JOHN D. SCHWARTZ, Chief Judge.

This matter is before the court on the Trustee's Motion for Summary Judgment ("Summary Judgment Motion") in his favor on two counts of his second amended complaint ("Complaint"). Counts II and III of the Complaint seek to avoid certain ownership transfers made by Larry Miller ("Larry") and Barbara Miller ("Barbara") as being fraudulent. Larry and Barbara are two individual Debtors under two related Chapter 11 bankruptcy cases who are collectively referred to in the complaint as the "Millers."

Counts II & III involve the following alleged transfers:

(1) Larry's transfers on or about March 27, 1990 of:

(a) His entire beneficial interest in the "Vacant Lot Land Trust" and the "Home Land Trust" to Barbara.

(b) 49.9% of his 50% partnership interest in both the "700 Ogden Building Partnership" and the "Fox River Farms Partnership" to Barbara.

(c) .1% of his 50% partnership interest in both the "700 Ogden Building Partnership" and the "Fox River Farms Partnership" to his son, Eric Miller ("Eric").

Collectively, these transfers are referred to in the Complaint as "Transfer # 1."

(2) Barbara's transfers on or about August 2, 1990, of:

(a) Her entire beneficial interest in the Vacant Lot Land Trust and the Home Land Trust to the "Miller Children Trust."

(b) Her 99.9% interest in the 700 Ogden Building Partnership and Fox River Farms Partnership to the Miller Children Trust.

Collectively, these transfers are referred to in the Complaint as "Transfer # 2."

The Trustee first seeks summary judgment in his favor on Count II of the Complaint. Count II seeks to avoid Transfers # 1 & # 2 pursuant to Bankruptcy Code section 544(b) and to recover from the Miller Children Trust all property or the value thereof transferred (collectively referred to as the "Property") to the trust by virtue of the fraudulent conveyances along with the interest thereon from August 2, 1990.

As a basis for avoidance and recovery, the Trustee alleges that:

(1) Transfers # 1 & # 2 were made with the actual intent to hinder, delay, or defraud any creditor of the Millers within the meaning of UFTA; [1]

(2) The Millers made Transfers # 1 & # 2 without receiving in exchange reasonably equivalent value within the meaning of UFTA; and

(3) The Millers were insolvent or they became insolvent as a result of the transfers within the meaning of UFTA.

The Trustee also seeks summary judgment in his favor on Count III of his Complaint. Count III also relies on Bankruptcy Code Section 544(b), but it seeks to avoid Larry's transfer to Eric of Larry's .1% partnership interest in both the 700 Ogden Building Partnership and the Fox River Farm Partnership ("Partnership Transfers"). The Partnership Transfers are part of the transfers referred to in the Complaint as Transfer # 1.

As a basis for this claim, the Trustee alleges that:

(1) The Partnership Transfers were made with the actual intent to hinder, delay, or defraud any creditor of Larry within the meaning of UFTA;

(2) The Partnership Transfers were made without Larry receiving reasonably equivalent value with the meaning of UFTA in exchange for the value of the property transferred; and

(3) Larry was insolvent or became insolvent within the meaning of UFTA as a result of the Partnership Transfers.

---

1. Illinois has adopted the Uniform Fraudulent Transfer Act ("UFTA") which is codified in 740 ILCS 160/1 et seq. and which had an effective date of January 1, 1990.

As part of the relief sought by Count III, the Trustee also seeks the recovery of Larry's .1% partnership interest or the value thereof, together with interest thereon from March 27, 1990.

In his Summary Judgment Motion, the Trustee further seeks a Declaratory Judgment that:

(1) The Bankruptcy Estate of Larry owns and is now the holder of (1) 9/21 of the beneficial interest in the Vacant Lot Land Trust, (2) 50% of the beneficial interest in the Home Land Trust, and (3) 50% of the partnership interest in both the 700 Ogden Building Partnership and the Fox River Farms Partnership.

(2) The Bankruptcy Estate of Barbara owns and is now the holder of (1) 9/21 of the beneficial interest in the Vacant Lot Land Trust, (2) 50% of the beneficial interest in the Home Land Trust, and (3) 50% of the partnership interest in both the 700 Ogden Building Partnership and the Fox River Farms Partnership.

The Trustee argues that summary judgment is proper as "the pleadings, depositions, answers to interrogatories, and admissions on file, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). (Fed.R.Bankr.P. 7056 applies Fed.R.Civ.P. 56 to adversary proceedings.) The Trustee's basis for the Summary Judgement Motion is the assertion that the judgment of the State Court ("State Court Order") involved identical issues of fact and law. The Trustee argues that the State Court Order was a final order and that it results in the application of collateral estoppel, which prevents the Defendants from raising any defense to the Summary Judgment Motion.

In accordance with general rule 12(m) of the General Rules and Civil Rules of the United Stated Bankruptcy Court for the Northern District of Illinois,[2] the Trustee has filed a "Supporting Memorandum of Law"

and a "Statement of Undisputed Material Facts."

Julia Miller McDonnell ("Julia"), Guardian Ad Litem for Eric Miller and Andrew Miller filed a response to the Summary Judgment Motion, Supporting Memorandum of Law, and Statement of Undisputed Material Facts.[3] In that response, she asserts that the Trustee's filings:

accurately set[ ] forth the facts surrounding the transfers of the assets of Larry Miller and Barbara Miller and the findings that the state court made with regard to the lawsuit filed and prosecuted by Galvin Kennedy, with the exception that, at no time does the Trustee reference or in any way address a 3/21 interest that Julia Miller McDonnell asserts individually in and to 8200 West Ogden Avenue in Lyons, Illinois [ ("Vacant Lot Land Trust") ] . . . Accordingly, McDonnell has no defenses with which the Trustee's [Summary] Judgment Motion can be attacked and/or defeated, with the limited exception that Julia Miller McDonnell hereby makes no admission or concessions with regard to her 3/21 interest in and to 8200 West Ogden Avenue, Lyons, Illinois [ (Vacant Lot Land Trust) ].

In reply to Julia's response, the Trustee states that the Summary Judgment Motion only seeks to avoid as fraudulent the Millers' transfer of their combined 18/21 (9/21 each) interest in the Vacant Lot Land Trust and that Counts II & III do not seek to avoid or otherwise attack Julia's 3/21 interest in the Vacant Lot Land Trust.

## JURISDICTION

This court has jurisdiction to entertain the Summary Judgment Motion pursuant to 28 U.S.C. § 1334 and general rule 2.33(A) of the General and Civil Rules of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (K).

---

**2.** Hereafter, any reference to a general rule of the local bankruptcy rules is denoted as "Local Rule."

**3.** The Trustee asserts that the Millers, defendants to this suit as Trustees of the Miller Children Trust, have not answered the complaint. An examination of the docket reveals such.

## UNDISPUTED FACTS

■ In making these findings of undisputed facts the court notes that Local Rule 12(n) provides that "all material facts set forth in the statement required of the moving party [("12(m) Statement")] will be deemed to be admitted unless controverted by the [reply] statement of the opposing party." Any material fact set forth in the 12(m) Statement that was not specifically controverted is deemed admitted. *See Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990).

Some of the undisputed facts include legal conclusions. The court deems those admitted facts to be a waiver of objection to these legal conclusions.

The undisputed facts are as follows:

1. In 1973, Galvin Kennedy ("Kennedy") and the Millers entered into a joint venture ("Joint Venture") to develop property in the Village of Glen Ellen, Illinois.

2. In 1977, Kennedy sued the Millers in the Circuit Court for the 18th Judicial Circuit, DuPage County, Case No. 77 CH 100 (the "Kennedy Lawsuit"). The Kennedy Lawsuit related to the Joint Venture.

3. Prior to March, 1990, Barbara and Larry each owned a 9/21 share (18/21 total) share of the beneficial interest in the "Vacant Lot Land Trust." The Vacant Lot Land Trustee holds legal title to real property located in Lyons, Illinois.

4. Prior to March, 1990, Barbara and Larry each owned a 50% share of the beneficial interest in a land trust known as the "Home Land Trust." The Home Land Trust holds title to real property located at 500 50th Place.

5. In sum, Barbara and Larry each held an interest in the Home Land Trust, the Vacant Lot Land Trust, the 700 Ogden Partnership and the Fox River Farms Partnership (collectively referred to as the "Property").

6. Between March and May of 1990, Larry transferred all of his interest in the Home Land Trust and the 700 Ogden Partnership to Barbara for no consideration. He also transferred 99.99% of his interest in the 700 Ogden Partnership and the Fox River Farms Partnership to Barbara for no consideration.

7. During the same period, Larry transferred the remaining .1% of his interest in the 700 Ogden Partnership and the Fox River Farms Partnership to Eric for no consideration ("Partnership Transfers"). (Collectively, the transfers by Larry are referred to in the Complaint as "Transfer #1".)

8. In August, 1990, Barbara established the "Miller Children Trust," with the Millers as trustees having a right to the income from the Trust and with the trust property being distributed to the Eric Miller, Julia Miller, and Andrew Miller (collectively the "Miller Children") upon the deaths of the Barbara and Larry.

9. Also in August, 1990, Barbara transferred all of her interest in the properties to the Miller Children Trust for no consideration ("Transfer #2"). Transfer #2 was recorded on September 28, 1990 by the various land trustees of the trusts holding title to the Properties.

10. At the time of the transfers, the Properties had a net worth in excess of $5,000,000.

11. After Transfer #2, the Millers only had assets consisting of two automobiles and an IRA account.

12. In 1990, the following lawsuits were pending against Larry or Barbara (conjunctive):

(a) In March 1990, a lawsuit against Larry and Barbara, filed in 1977 by Galvin Kennedy ("Kennedy Lawsuit"), was pending in the Circuit Court for the 18th Judicial Circuit, Dupage County, Il., Case No. 77 CH 100.

(b) In March, 1990, there was a lawsuit against Larry pending in federal court which was filed by Patricia James ("James Lawsuit").

(c) In September, 1990, a lawsuit was filed by the FDIC in federal court seeking a judgment in excess of $20,000 against Larry and Barbara.

(d) In October, 1990, a lawsuit was filed by McKenna, Storer, Rowe, White & Farrug against Larry for legal fees of approximately

$137,000 which arose prior to February 21, 1990.

13. On April 23, 1992, Kennedy obtained a judgment ("Judgment") against the Millers on the Kennedy Lawsuit in the amount of $538,978.44 in the State Court.

14. On August 10, 1992, the State Court, in response to Kennedy's Motion in Aid of Enforcement of his Judgment ("Kennedy Fraudulent Transfer Action") conducted an evidentiary hearing and entered a final order ("State Court Order") avoiding as fraudulent certain property transfers made by Larry (Transfer # 1) and Barbara (Transfer # 2) during 1990 pursuant to the Uniform Fraudulent Transfer Act ("UFTA") (codified in 740 ILCS 160/1 et seq.).

15. The Millers and the Miller Children appeared at this evidentiary hearing, were represented by counsel, and opposed the Kennedy Fraudulent Transfer Action.

16. On August 24, 1992, and August 31, 1992, Larry and Barbara individually filed their respective bankruptcy cases in this Court. (Collectively referred to as the "Cases.") On September 2, 1992, David Grochocinski was appointed as Trustee for both bankruptcy Cases. On or about September 21, 1992, the Court entered an order directing that the Cases be jointly administered, which was entered on both dockets on September 23, 1992.

17. Pursuant to the Court's order entered on November 23, 1992, the Kennedy Judgment was partially satisfied by a payment made by the Trustee pursuant to a settlement and Kennedy now has an allowed unsecured claim in the Cases in the amount of $182,000 which is comprised of principal and interest due and owing under the Judgment ("Kennedy Unsecured Claim"). The Kennedy Unsecured Claim arose prior to March, 1990.

18. On January 7, 1993, the Trustee filed an amended complaint in this adversary proceeding against the Millers, as trustees of the Trust, and the Miller Children (collectively the "Defendants"). Pursuant to Counts II and III of the Complaint, the Trustee requests the entry of an order avoiding Transfer # 1 and Transfer # 2 as fraudulent trans-

fers pursuant to 11 U.S.C. § 544(b) and a recovery for the benefit of Larry's and Barbara's estates, the property transferred or value of such property pursuant to 11 U.S.C. § 550.

19. On January 7, 1993, the court entered an order authorizing and directing that the defendant Julia Miller McDonnell ("Julia") act as a guardian ad litem for the minor defendants, Eric Miller ("Eric") and Andrew Miller ("Andrew"). (Collectively referred to as the "Miller Children").

20. On September 9, 1993, the Miller Children filed their answer to the Complaint.

## DISCUSSION

 Summary judgment can only be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). (Fed.R.Bankr.P. 7056 applies Fed. R.Civ.P. 56 to adversary proceedings.) A material fact is one that must be decided in order to resolve the substantive issue that is the subject of the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To determine whether there is a dispute as to any material fact, the court must draw inferences from the underlying facts in a light most favorable to the non-moving party. Rodeo v. Gillman, 787 F.2d 1175, 1177 (7th Cir.1986). However, summary judgment is appropriate where the undisputed facts make the outcome clear. Alexander v. Erie Ins. Exchange, 982 F.2d 1153, 1160 (7th Cir.1993). If, through the summary judgment motion and supporting filings, the movant presents sufficient competent evidence to entitle it to judgment as a matter of law, the non-movant cannot rest on mere allegations in the pleadings or speculation; the non-movant must, through competent evidence, demonstrate specific facts that create a genuine issue for trial. See In re Ralar Distributors, Inc., 4 F.3d 62, 67 (1st Cir.1993); Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir.1989); In re AM Int'l, Inc., 142 B.R. 252, 254 (Bankr. N.D.Ill.1992).

In moving for summary judgment, the Trustee argues that there is no genuine issue of material fact because the Defendant's are collaterally estopped from denying any of the elements necessary for the Trustee to avoid a transfer under 11 U.S.C. § 544(b) and to recover the property or value thereof under 11 U.S.C. § 550.

Bankruptcy Code section 544(b) allows the trustee to avoid any transfer of an interest of the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Bankruptcy Code section 502. This subsection is read to incorporate the forum state's law of fraudulent conveyance. *See In re Josefik,* 72 B.R. 393, 397 n. 4 (Bankr.N.D.Ill.1987). In this court, the proper forum is the state of Illinois. Hence, Counts II & III of the Trustee's Complaint and the Kennedy Fraudulent Transfer Action are both governed by Illinois law. Illinois has enacted the Uniform Fraudulent Transfer Act, which is codified in 740 ILCS 160/1 et seq.

The Trustee asserts:

(1) the Kennedy Fraudulent Transfer Action was based on Illinois law and its adoption Uniform Fraudulent Transfer Act (UFTA);

(2) the defendants in this suit were also defendants to the Kennedy Fraudulent Transfer Action;

(3) the transfer sought to be avoided by this suit are the same as the transfers avoided in the Kennedy Fraudulent Transfer Action.

The preclusive effect of a state court judgment in a subsequent federal lawsuit is generally determined by the full faith and credit statute. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985). The statute directs federal courts to refer to the preclusion law of the state in which the judgment was entered. *See* 28 U.S.C. § 1738. Because judgment was entered by an Illinois court, Illinois Law must be used to determine the preclusive effect of that judgment.

Under Illinois Law, collateral estoppel may apply if: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *In re Owens,* 125 Ill.2d 390, 532 N.E.2d 248, 252, 126 Ill.Dec. 563, 567 (1988). Generally, there is no mutuality of party requirement, so that the fact that the Trustee was not a party to the Kennedy Fraudulent Transfer Action does not act to prevent the application of collateral estoppel. *See In re Owens,* 532 N.E.2d at 251, 126 Ill.Dec. at 566.

Thus, particular facts and issues that are in common and material to the disposition of both the prior state court action and the suit for this court, may be barred from be relitigated. *See Cirro Wrecking Company v. Roppolo,* 153 Ill.2d 6, 605 N.E.2d 544, 552, 178 Ill.Dec. 750, 758 (1992). The State Court Order, entered August 10, 1992, made numerous factual and legal determinations including:

(1) That the transfers by Larry to Barbara of all his interest in the vacant lot (Vacant Lot Land Trust), the house (Home Land Trust), the 700 E. Ogden building (700 Ogden Building Partnership) and the farm (Fox River Farms Partnership) between March and May of 1990 were fraudulent and voidable under Sections 5 & 6 of UFTA (codified in 740 ILCS 160/5, 6). State Court Order at 6–7.

(2) That the transfers by Barbara to the Miller Children Trust (being her entire interest in the Vacant Lot Land Trust, the Home Land Trust, the 700 Ogden Building Partnership, and the Fox River Farms Partnership) between August and September of 1990 were fraudulent and voidable under Sections 5 & 6 of UFTA (codified in 740 ILCS 160/5, 6). State Court Order at 7–9.

Because the court gives full faith and credit to the State Court Order and determinations made therein, these matters are deemed to have already been decided and the Defendants are collaterally estopped

from denying any of the allegations contained in the complaint as to Transfer # 1, except for the alleged Partnership Transfers of .1% of Larry's interest in such to Eric. This transfer was not part of the Kennedy Lawsuit, Kennedy Fraudulent Transfer Action and not addressed in the State Court Order.[4] Hence, collateral estoppel cannot be applied as to the Partnership Transfers as this issue is not identical to one decided by the state court action. *See In re Owens,* 532 N.E.2d at 252, 126 Ill.Dec. at 567.

However, the court concludes, as a matter of law, that the Partnership Transfers were fraudulent under sections 5 and 6 of UFTA (codified in 740 ILCS 160/5, 6). As none of the Defendants have contested the assertions made in the 12(m) Statement, the court has taken those assertions to be true. The Partnership Transfers made by Larry to his minor son Eric occurred between March and May of 1990, was for no consideration, and made at a time when: (1) Larry transferred almost all of his other assets to Barbara for no consideration and which transfers were deemed by a state court to be fraudulent under sections 5 and 6 of UFTA; (2) Larry and Barbara were defendants to the pending Kennedy Lawsuit; and (3) Larry was a defendant to the pending James Lawsuit *See e.g., Crawford County State Bank v. Marine American Nat. Bank,* 199 Ill. App.3d 236, 556 N.E.2d 842, 145 Ill.Dec. 224 (4th Dist.1990); *Anderson v. Ferris,* 128 Ill. App.3d 149, 470 N.E.2d 518, 83 Ill.Dec. 392 (2d Dist.1984).

Finally, the Partnership Transfers to Eric along with the remaining transfers to Barbara that made up transfers defined in the Complaint as Transfer # 1 left Larry without any tangible assets except for an automobile. Thus, summary judgment is also proper as to the Partnership Transfers. *See e.g. Reagan v. Ivanelli,* 246 Ill.App.3d 798, 617 N.E.2d 808, 187 Ill.Dec. 351 (2d Dist.1993).

4. The Trustee admits that the Partnership Transfers are the only factual allegations in the Complaint which are different from the allegations addressed and findings made in the State Court Order. The Trustee asserts that this allegation differs only because the Trustee did not discover the .1% Partnership Transfers until the Millers

The failure of the Defendants to controvert the assertions made in the 12(m) Statement results in them being deemed admitted. These assertions provide an alternative basis for finding that Transfers # 1 & # 2 were fraudulent and are voidable under UFTA.

For these reasons, judgment will be entered on Counts II & III in favor of the Plaintiff and the requested relief will be given.

testified as to their § 341 meeting. It was originally thought that all Larry's interest in the 700 Ogden Partnership and Fox River Farms Partnership was transferred to Barbara. This transfer was found by the state court to be fraudulent within the meaning of UFTA.